UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------X
In re                                                            Chapter 11

JEFFREY JOSEPH JEROME and
CAROLINE JEROME,                                      Case No. 14-75114-ast


                              Debtor.
--------------------------------------------------------X


# CHAPTER 11 PLAN OF REORGANIZATION OF THE
# DEBTORS JEFFREY AND CAROLINE JEROME


THE LAW OFFICE OF MICHAEL G. Mc AULIFFE
Counsel for the Debtors
68 South Service Road, Suite 100, Melville, New York 11747
Phone: (631) 465-0044 / Fax: (631) 465-0045

## TABLE OF CONTENTS

ARTICLE I - DEFINITIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARTICLE II - TREATMENT OF ADMINISTRATIVE EXPENSES AND PRIORITY TAX CLAIMS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

ARTICLE III - CLASSIFICATION OF CLAIMS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

ARTICLE IV - CLASSES OF CLAIMS WHICH ARE NOT IMPAIRED UNDER THIS PLAN . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

ARTICLE V - TREATMENT OF CLAIMS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

ARTICLE VI - INJUNCTION OF ACTIONS AGAINST THE DEBTOR; FULL AND FINAL SATISFACTION OF ALL CLAIMS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

ARTICLE VII - DEFAULT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

ARTICLE VIII - EXECUTORY CONTRACTS AND UNEXPIRED LEASES . . . . . . . . . . . . 16

ARTICLE IX - MEANS OF IMPLEMENTATION OF THIS PLAN . . . . . . . . . . . . . . . . . . . 17

ARTICLE X - RELEASES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

ARTICLE XI - EFFECT OF CONFIRMATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

ARTICLE XII - RETENTION OF JURISDICTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

ARTICLE XIII MISCELLANEOUS PROVISIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------X
In re                                                    Chapter 11

JEFFREY JOSEPH JEROME and
CAROLINE JEROME,                                         Case No. 14-75114-ast


                          Debtor.
--------------------------------------------------------X

## CHAPTER 11 PLAN OF REORGANIZATION OF THE DEBTORS
## IN POSSESSION IN THE ABOVE-REFERENCED CASE

         The Debtors (as defined herein) hereby propose and agree to be bound by
the following chapter 11 Plan:

### ARTICLE I

Definitions

         Capitalized terms used in this Plan shall have the meanings set forth in this Article
I.

         The following general rules of construction shall apply to the terms used in, and
otherwise for, this Plan:

         a.       Singular terms shall include the plural and plural terms shall include the
         singular.

         b.       Definitions for any term in this Article I shall control over any contrary or
         other definitions for such term in the Bankruptcy Code or the Bankruptcy Rules
         (as defined herein).

         c.       Terms which are used in this Plan which are undefined in this Article 1
         shall have the meaning given for such terms in the Bankruptcy Code or the
         Bankruptcy Rules, as applicable.

         d.       The rules of construction for words, terms, and phrases which are set forth
         in Section 102 of the Bankruptcy Code shall apply herein, unless otherwise
         provided in this Plan or in an Order of the Bankruptcy Court.

1

1.1    "Administration Expense" shall mean that portion of any Unsecured Claim which is a cost or expense of administration of the Chapter 11 Case, entitled to priority treatment under Section 507(a)(2) of the Bankruptcy Code, including without limitation, (a) any actual, necessary costs and expenses of preserving the Bankruptcy Estate and/or of operating the Debtors, or administering any of the Debtors' assets; (ii) all Professional Fees to and until Confirmation, which are allowed by Order of the Bankruptcy Court, after notice and a hearing, as required by law; and (iii) all fees or charges assessed against the Bankruptcy Estate under chapter 123 of Title 28, United States Code, including but not limited to fees owed to the Office of the U.S. Trustee.

1.2    "Allowed Claim" shall mean:

(A)  all Claims that were listed in the Debtors' Schedules, without any accompanying reference that the Claim is contingent, disputed, unliquidated, or unknown, provided that:

(i)   such listing is not superseded by the amendment of the Schedules prior to the last date for objections to Claims set forth in Section 6.7 of the Plan, or by the filing of a proof of claim with the Bankruptcy Court on or before the Bar Date, or by a written stipulation between the Claimant and the Debtors, which is authorized and approved by a Final Order.  (In either of these events, the listed Claim shall automatically be deemed expunged and to constitute a Disallowed Claim, without any necessity for there to be a formal order expunging the listed Claim, although same may be sought to be obtained, in the sole, unfettered discretion of the Debtors); or

(ii)  the Claim is not, and/or does not become a Disputed Claim or Disallowed Claim;

(B)  was filed in an appropriate form with the Office of the Clerk of the Bankruptcy Court on or before the Bar Date, for a fixed non-contingent definite amount, provided that:

(i)   such filed Claim is not superseded by a written stipulation and order, or other written stipulation, between the Claimant and the Debtors, which is authorized and approved by a Final Order (in which event such filed Claim shall automatically be deemed expunged and to constitute a Disallowed Claim, without any necessity for there to be a formal order expunging it, although same may be sought to be obtained, in the discretion of the Debtors), or

(ii)  the Claim is not, and/or does not become a Disputed Claim or a Disallowed Claim; or

2

(C) is allowed or classified as such by a Final Order of the Bankruptcy Court, including but not limited to a stipulation and order, or a Final Order which authorizes and approves a written stipulation between the Claimant and the Debtors, as to the Claim, and does not thereafter become a Disputed Claim or Disallowed Claim.

1.3    "Allowed General Unsecured Claim" shall mean that portion of an Allowed Unsecured Claim which is not (a) an Allowed Administration Expense, (b) an Allowed Priority Claim, or (c) an Allowed Priority Tax Claim.

1.4    "Allowed Priority Claim" shall mean that portion of an Allowed Unsecured Claim that is entitled to priority under section 507(a) of the Bankruptcy Code which is not an (a) Allowed Administration Expense or (b) an Allowed Priority Tax Claim.

1.5    "Allowed Priority Tax Claim" shall mean that portion of any governmental unit's Allowed Unsecured Claim for taxes, which is entitled to priority treatment pursuant to Section 507(a)(8) of the Bankruptcy Code.

1.6    "Allowed Secured Claim" shall mean all Allowed Claims secured by a "lien", as that term is defined at section 101(37) of the Bankruptcy Code, including, but, not limited to, a "judicial lien" as that term is defined at Section 101(36) of the Bankruptcy Code, against any Property (as defined at Section 541 of the Bankruptcy Code) of the Estate, but only to the extent of the "value", as determined by the Bankruptcy Court pursuant to section 506(a) of the Bankruptcy Code and Bankruptcy Rule 3012 or as otherwise agreed to, of such Claimant's interest in the Estate's interest in such Property; the Claimant's interest must be lawfully perfected, and not subject to avoidance under the Bankruptcy Code or any applicable non-bankruptcy law.

1.7    "Allowed Unsecured Claim" shall mean that portion of any Allowed Claim which is not an Allowed Secured Claim.

1.8    "Ballot" shall mean the voting form distributed to holders of Claims in Classes that are Impaired and entitled to vote on this Plan, for the purpose of indicating acceptance or rejection of this Plan.

1.9    "Bankruptcy Code" shall mean title 11 of the United States Code, 11 U.S.C. § 101 et seq., and all amendments thereto.

(References in this Plan to a specific provision of the Bankruptcy Code shall be to the Section number of such provision as of the date of this Plan).

1.10    "Bankruptcy Court" shall mean the United States Bankruptcy Court for the Eastern District of New York, or such other Court as may hereafter be granted jurisdiction over the Debtors' bankruptcy case herein.

1.11    "Bankruptcy Rules" shall mean the Federal Rules of Bankruptcy Procedure prescribed pursuant to 28 U.S.C. Section 2075, as now in effect or hereafter amended.

      (References in this Plan to a specific provision of the Bankruptcy Rules shall be to the Rule number of such provision as of the date of this Plan.)

1.12    "Bar Date" shall mean January 27, 2015, the date which has been established by Final Order of the Bankruptcy Court dated November 20, 2014 as the final date for the filing and/or assertion of any and all Claims which arose or may be deemed to have arisen against the Debtors' or the Debtors' Estate, on or before the Filing Date, or thereafter on or before January 27, 2015, with the exceptions noted in such Order.

1.13    "Business Day" shall mean any day other than a Saturday or Sunday, except if such day is a legal holiday.

1.14    "Claim" shall mean (a) any and all asserted or alleged rights to payment from the Debtors and/or the Debtors' Estate which arose and/or may for any reason be deemed to have arisen <u>on or before the Confirmation Date</u>, whether or not such right was listed in the Debtors' Schedules, reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, legal, equitable, secured, or unsecured, or (b) any and all asserted or alleged rights against the Debtors and/or the Debtors' Estate which arose and/or may for any reason be deemed to have arisen <u>on or before the Confirmation Date,</u> to an equitable remedy for breach of performance if such breach gives rise or allegedly gives rise to a right to payment from the Debtors or the Debtors' Estate, whether or not such right is listed in the Debtors' Schedules, reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

1.15    "Claimant" shall mean any Entity which possesses, or claims for any reason to possess, or may be deemed for any reason to possess, a Claim against the Debtors or the Debtors' Estate.

1.16    "Confirmation" shall mean the entry of an Order by the Bankruptcy Court, confirming this Plan in accordance with the provisions of the Bankruptcy Code, whether or not it becomes a Final Order.

1.17    "Confirmation Date" shall mean the date upon which the Confirmation Order becomes a Final Order.

1.18    "Confirmation Order" shall mean the Order of the Bankruptcy Court confirming the Plan pursuant to Section 1129 of the Bankruptcy Code.

1.19    "Creditor" shall mean any Claimant whose Claim either (a) arose at or before the Filing Date, or (b) for any reason is deemed to have arisen at or before the Filing Date.

1.20    "Debt" shall mean the Debtors' or the Debtors' Estate's potential or actual liability on or with respect to a Claim.

1.21    The "Debtors" shall mean the Debtors in Possession herein, being the Jeffrey Jerome and Caroline Jerome.

1.22    The Debtors' "Estate" shall mean and shall comprise all of the Debtors' property, to the extent and in the manner set forth at Section 541 of the Bankruptcy Code.

1.23    "Disallowed Claim" shall mean (a) a Claim listed in the Debtors' Schedules with an accompanying reference that the Claim is contingent, unliquidated, unknown, or disputed, (b) a Claim which is deemed expunged or disallowed for the reasons set forth anywhere in this Plan, or (c) a Claim or any portion thereof which is disallowed by a Final Order of the Court.

1.24    "Disclosure Statement" shall mean the document relating to the Plan which is proposed pursuant to Section 1125 of the Bankruptcy Code, as the same is amended, modified, or supplemented (and all exhibits and schedules annexed thereto or referred to therein).

1.25    "Disputed Claim" shall mean a Claim, or portion thereof, (a) as to which an objection to the allowance thereof or a request for the reconsideration, reclassification, or review thereof is interposed on or before the last date for the filing of objections to Claims set forth in Section 6.7 of this Plan, or (b) was filed for an unknown or unliquidated amount, or as being contingent, and is not fixed or liquidated under a Final Order of the Bankruptcy Court on or before the last date for the filing of objections to Claims set forth in Section 6.7 of this Plan.

In no event shall any distribution be remitted for or on account of any Disputed Claim until and unless the Claim or any portion thereof becomes an Allowed Claim; and to the extent only a portion thereof is fully and finally Allowed pursuant to a Final Order, distributions shall only be remitted for and on account of such Allowed portion.

1.26    The "Effective Date" of the Plan shall mean the date that is twenty (20) days following the Confirmation Date, or, if such date is not a Business Day, the next succeeding Business Day.

1.27    "Entity" shall mean any individual, proprietorship, partnership, corporation, estate, trustee, and/or governmental unit, including without limitation <u>any</u> form or method of business or charitable organization of Persons.

1.28    "Filing Date" shall mean the date of the commencement of the Debtors' chapter 11 case herein, being November 13, 2014, at which time the Debtors' Petition was filed with the Bankruptcy Court.

1.29    "Final Order" shall mean an order of the Bankruptcy Court or any other court of competent jurisdiction (a) as to which the time to appeal, petition for *certiorari*, or move for reargument or rehearing has expired and as to which order no appeal, petition for *certiorari*, or other proceeding for reargument or rehearing shall then be pending, or (b) as to which any right to appeal, petition for *certiorari*, reargue, or rehear shall have been waived in writing satisfactory to the Debtors (c) as to which, in the event that an appeal, writ of *certiorari*, or reargument or rehearing thereof there shall have been a determination denying any relief by the highest court to which such order was appealed, or *certiorari*, reargument or rehearing granted, and the time to further appeal, petition for *certiorari* or move for reargument or rehearing shall have expired.

1.30    "Impaired", when used with respect to any Claim or Class, has the same meaning as that contained in section 1124 of the Bankruptcy Code.

1.31    "Makamah Rental Property" shall mean the parcel of real property located at 36 Makamah Road, Northport, New York.

1.32    "Norwood Rental Property" shall mean the parcel of real property located at 68 Norwood Avenue, Northport, New York.

1.33    "Person" shall mean an individual, corporation, partnership, joint venture, trustee, estate, unincorporated association, unincorporated organization, governmental unit, or any other Entity.

1.34    "Petition" shall mean the voluntary petition for relief under chapter 11 of the Bankruptcy Code, which the Debtors filed to commence their chapter 11 case before and in the Bankruptcy Court.

1.35    "Plan" shall mean this chapter 11 plan of reorganization, and any exhibits hereto and any documents delivered in connection herewith, and any amendments or modifications thereof.

6

1.36    "Post-Petition" shall mean any date subsequent to the Filing Date.

1.37    "Pre-Petition" shall mean any date prior to the Filing Date.

1.38    "Priority Claimant" shall mean the holder of an Allowed Priority Claim.

1.39    "Priority Tax Claimant" shall mean the holder of an Allowed Priority Tax Claim.

1.40    "Professional Fees" shall mean all awards of compensation or reimbursement allowed under [a] Final Order[s] of the Bankruptcy Court issued pursuant to Sections 330 and/or 331 of the Bankruptcy Code, in or in connection with the Debtors' chapter 11 case herein at any time from the Filing Date to and until the date of the issuance of the Confirmation Order.

1.41    "Pro Rata", with respect to a particular class of Claims, shall mean proportionally and pari passu, so that the ratio of the amount of consideration distributed on account of an Allowed Claim to the holder of the Allowed Claim, is the same as the ratio of the amount of consideration distributed on account of all other Allowed Claims of the class in which the particular Claim is included to the amount of all Allowed Claims of that class.

1.42    "Reorganized Debtors" shall mean the Debtors, from and after the Effective Date.

1.43    "Residential Property" shall mean the parcel of real property located at 241 Norwood Avenue, Northport, New York  at which the Debtors reside.

1.44    "Schedules" shall mean the schedules of assets and liabilities filed by the Debtors herein, and any amendments or supplements thereof.

1.45    "Unimpaired" shall mean any class of Claims that is not Impaired.

1.46    "Unsecured Claim" shall mean any Claim or portion thereof which is asserted against of the Debtors and/or their Estate on or before the Claim Bar Date or which is for any reason permitted to be asserted by the Bankruptcy Court against the Debtors and/or their Estate even if not asserted on or before the Claim Bar Date, and which is not subject to setoff under Section 553 of the Bankruptcy Code or secured by a lien on property in which the Debtors and/or the Debtors' Estate have an interest.

## ARTICLE II

Treatment of Administration Expenses and Priority Tax Claims

2.1    Except as otherwise agreed by individual holders of Administration Expenses, Entities due Administration Expenses shall be entitled to receive cash equal to the unpaid portion of their Administration Expenses on or as soon as practicable (not to exceed 10 business days) after the Effective Date of the Plan, provided that (a) such Administration Expenses are not Disputed Claims for any reason, (b) Administration Expenses (excluding tort Claims) that represent liabilities for goods sold and delivered or non-Professional Fee services rendered to the Debtors in the ordinary course of business between the Filing Date and the Confirmation Date shall be paid in the ordinary course of business in accordance with the terms and conditions of any agreements relating thereto, or as otherwise agreed by and between the Debtors and the holder of the Administration Expense, and (c) Professional Fees shall be paid within 10 days following the date of the issuance of [a] Final Order[s] approving such Fees, or as otherwise agreed.

2.2    Except to the extent that a particular Priority Tax Claimant has agreed prior to the Filing Date or agrees in the future to a different treatment in writing, all Allowed Priority Tax Claims shall be paid in full, together with interest accruing either at the rates prescribed by applicable law to be paid if such Claim were an Allowed Priority Tax Claim, or such other rate which is prescribed in a Final Order, by way of equal monthly installments commencing on or as soon as practicable after the Effective Date of the Plan and coming due thereafter on the first day of each of the next consecutive months, through and including October 1, 2019.

Automatically on the Confirmation Date, all Priority Tax Claimants shall be deemed to be enjoined and restrained from taking or continuing any action to collect on any actual or potential Claim or Claims which they may assert or make against the Debtors, pending any default which is not cured in the manner and time set forth in Article VII hereof.

Application of Payments:  All of the Debtors' aforementioned payments to Priority Tax Claimants shall and must be applied under any and all circumstances by such Claimants (a) first, in full to and against the portion of such Claim which is or may be deemed or construed to be or constitute a personal fiduciary liability of the Debtors; and (b) next, only after any and all such actual and/or potential fiduciary liability has been paid in full, as directed by the Priority Tax Claimant, or as is otherwise directed under any applicable law.

## ARTICLE III

Classification of Claims

3.1     A Claim is in a particular class only to the extent that the Claim qualifies within the description of that class and is in a different class to the extent that the remainder of the Claim qualifies within the description of a different class.

3.2     All Claims shall be divided into the following classes, which classes shall be mutually exclusive:

    a.      Class 1 shall consist of the Allowed Secured Claim of of JPMorgan Chase Bank, N.A. ("Chase") which is secured by a first position mortgage lien against the Debtors' Residential Property.

    b.      Class 2 shall consist of the Allowed Secured Claim of Bank of America, NA ("BOA") which is secured by a second position mortgage lien  against the Debtors' Residential Property

    c.      Class 3 shall consist of the Allowed Secured Claim of Christiana Trust, a Division of Wilmington Savings Fund Society, FSB, as Trustee for Normandy Mortgage Loan Trust, Series 2013-17 ("Christiana") which is secured by a first position mortgage lien  against the Debtors' Norwood Rental Property

    d.      Class 4 shall consist of the Allowed Secured Claim of The Bank of New York Mellon (fka The Bank of New York) as Trustee for the holders of American Trust Mortgage Investment Trustee 2004-4 ("BONY")  which is secured by a first position mortgage lien  against the Debtors' Makamah Rental Property

    e.      Class 5 shall consist of the Allowed Secured Claim of Dependable Credit Corp. ("Dependable) which is secured by a first position mortgage lien against the Debtors' Ford

    f.      Class 6 shall consist of all Allowed General Unsecured Claims.

## ARTICLE IV

Classes of Claims Which Are
Not Impaired Under this Plan

4.1     Class 5 is not impaired under this Plan.

9

4.2     In the event of a controversy as to whether the holders of Claims includable in a class herein are impaired, the Bankruptcy Court shall, after notice and a hearing, resolve such controversy.

## ARTICLE V

Treatment of Claims

5.1     Class 1 (Allowed Secured Claim of JPMorgan Chase Bank, N.A. ["Chase"] ). The Debtors shall reinstate the terms of the original note and mortgage agreement, and shall cure all remaining pre-petition mortgage arrears over a period of months, commencing on the Effective Date of the Plan. Monthly payments shall be made in regular monthly intervals and shall be due on the same day of the month upon which the Effective Date fell, or the next business day thereafter. Chase shall retain its first position mortgage lien on the Debtors' Residential Property until such time as the obligation to Chase is paid in full.

Within 20 days following the date that full payment due under the Note, Mortgage and the Debtors' Plan is received by this Claimant, it shall deliver to the Reorganized Debtor a satisfaction of lien, as well as any and all other additional documentation which the Debtor deems to be appropriate or necessary to evidence the satisfaction, settlement, and release of its liens on and Claims against the Debtors' Residential Property in forms satisfactory to the Debtor.

Payments to Holders of Class 1 Claims may be made on or before the date such payment(s) are due, at the sole discretion of the Debtors. Should the Debtors elect in their sole discretion to prepay all or any part of a distribution (including, without limitation, the amount of any or all additional distributions), to holders of Class 1 Claims, such prepayment shall be discounted to present value by the prime rate, as reported in the Wall Street Journal at the time of such prepayment.

This Class is Impaired.

5.2     Class 2 (Allowed Secured Claim of Bank of America, NA ["BOA"]). If and to the extent that it is determined that the forgiveness of debt provided for in the BOA Letter is accurate, then BOA shall execute and deliver to the Debtors (1) a satisfaction of any mortgage or other liens or encumbrances BOA has in connection with the Residential Property, in forms satisfactory to the Debtors, (2) any and all additional documentation which the Debtors reasonably deem to be appropriate or necessary to

10

evidence the satisfaction, settlement, and release of its liens on and Claims against the Residential Property in forms satisfactory to the Debtors.

If and to the extent that it is determined that BOA POC is accurate, the Debtors shall reinstate the terms of the original note and mortgage agreement, and will cure all remaining pre-petition mortgage arrears over a period of months, commencing on the Effective Date of the Plan. Monthly payments shall be made in regular monthly intervals and shall be due on the same day of the month upon which the Effective Date fell, or the next business day thereafter. BOA will retain its second position mortgage lien on the Debtors' Residential Property until such time as the obligation to BOA is paid in full.

Within 20 days following the date that full payment is received by a Class 2 Claimant, it shall deliver to the Debtors a satisfaction of lien, as well as any and all other additional documentation which the Debtors deem to be appropriate or necessary to evidence the satisfaction, settlement, and release of its liens on, and Claims, against the Debtors' Residential Property in forms satisfactory to the Debtors.

Payments to Holders of Class 2 Claims may be made on or before the date such payment(s) are due, at the sole discretion of the Debtors. Should the Debtors elect in their sole discretion to prepay all or any part of a distribution (including, without limitation, the amount of any or all additional distributions), to holders of Class 2 Claims, such prepayment shall be discounted to present value by the prime rate, as reported in the Wall Street Journal at the time of such prepayment.

This Class is Impaired.

5.3    Class 3 (The Secured Claim of Christiana Trust, a Division of Wilmington Savings Fund Society, FSB, as Trustee for Normandy Mortgage Loan Trust, Series 2013-17 ["Christiana"]). The Debtors shall modify Christiana's existing note and mortgage ("Christiana's Modified Note and Mortgage") to provide for the payment in full of Christiana's Allowed Secured Claim, in the amount either determined by stipulation between the Debtors and Christiana or in the amount fixed by Order of this Court. Christiana's Modified Note and Mortgage shall retain all of the provisions of Christiana's original note and mortgage, except that Christiana's Modified Note and Mortgage shall provide that payments shall be made in equal monthly installments over forty years at a fixed interest rate of 2.0%. Christiana will retain its first position mortgage lien on the Debtors' Norwood Rental Property until such time as the obligation to Christiana is paid in full.

11

This Class is Impaired.

5.4
Class 4 (The Secured Claim of The Bank of New York Mellon (fka The Bank of New York) as Trustee for the holders of American Trust Mortgage Investment Trustee 2004-4 ["BONY"]). The Debtors shall modify BONY's existing note and mortgage ("BONY's Modified Note and Mortgage") to provide for the payment in full of BONY's Allowed Secured Claim, in the amount either determined by stipulation between the Debtors and BONY or in the amount fixed by Order of this Court. BONY's Modified Note and Mortgage shall retain all of the provisions of BONY's original note and mortgage, except that BONY's Modified Note and Mortgage shall provide that payments shall be made in equal monthly installments over forty years at a fixed interest rate of 2.0%. BONY will retain its first position mortgage lien on the Debtors' Norwood Rental Property until such time as the obligation to BONY is paid in full.

This Class is Impaired.

5.5
Class 5 (The Secured Claim of Dependable Credit Corp. ["Dependable"]). The Debtors shall continue to pay Dependable in accordance with the terms of the Debtors' pre-petition agreements with Dependable and/or its predecessor in interest, which will fully resolve Dependable's Class 5 Claim. Dependable shall retain its first position lien on the Ford pending the payment in full of its Allowed Secured Claim. The Debtors shall pay all Post-Petition arrears (if any) in cash, on confirmation, pursuant to Article 2.1 of the Plan.

This Class is Unimpaired.

5.6
Class 6 (Allowed General Unsecured Claims): Under the Plan, on the later of (A) the Effective Date or (B) the date on which such Claim becomes an Allowed General Unsecured Claim, the Debtors shall pay holders of Allowed Claims includable in Class 6, a percentage of their Allowed General Unsecured Claims (the "Allowed Distribution"), without interest, in quarterly installments.

Payments to Holders of Allowed General Unsecured Claims in Class 6 may be made on or before the date such payment(s) are due, at the sole discretion of the Debtors. Should the Debtors elect in their sole discretion to prepay all or any part of a distribution (including, without limitation, the amount of any or all additional distributions), to holders of Allowed General Unsecured Claims in Class 6, such prepayment shall be

12

discounted to present value by the prime rate, as reported in the Wall Street Journal at the time of such prepayment.

This Class is Impaired.

## ARTICLE VI

## Injunction of actions against the Debtors; Full and Final Satisfaction of all Claims.

6.1        Automatically on the Confirmation Date, all Claimants and Creditors shall be deemed to be fully enjoined and restrained, pursuant to Section 105(a), 1141, and/or 1142 of the Bankruptcy Code as well as any other or further applicable provisions of law, from taking or continuing any action to collect on any actual or potential Claim or Claims which they may assert or make against the Debtors pending any default which is not cured in the manner and time set forth in Article VII hereof. Additionally, even in such event, if the holder of the Claim is or should be a Class 4 Claimant, such person or Entity must follow the terms and provisions in Article VII hereof, before first proceeding against any other Person or Entity.

6.2        All payments and all distributions hereunder, shall be in full and final satisfaction, settlement, release and discharge of all Claims of any nature whatsoever against the Debtors and their Estate; and the Debtors' Estate's property. Under no circumstances shall any additional consideration be payable to any Claimant or Creditor or any other Entity or Person from or by the Debtors.

6.3        All distributions to be made to holders of Allowed Claims pursuant to the Plan shall and must first be applied by the Claimant to that portion (if any) of the Allowed Claim which represents principal, and only to the extent that any such distribution exceeds such principal amount, can and may any portion of such distribution be applied to the portion of the Allowed Claim which represents allowable and allowed Pre-Petition interest.

6.4        Fractional Cents. Whenever any payment of a fraction of a cent would otherwise be called for to a Claimant, the actual payment shall reflect a rounding of such fraction to the nearest whole cent (rounding down in the case of .5 or less).

6.5        No Cash Payments of Less Than Five Dollars ($5.00). If a cash payment otherwise provided for by the Plan to or for the account of any Claimant in respect of any Allowed Claim, would be less than five dollars ($5.00) whether in the aggregate or on any separate payment date provide for in

the Plan, notwithstanding any contrary provision of the Plan, the Debtors shall in its sole unfettered discretion have the right to pay the entire amount due in one lump sum payment on or before the Effective Date of the Plan.

6.6     Resolution of Disputed Claims.  Unless otherwise ordered by the Bankruptcy Court,  the Debtors shall be entitled to litigate to judgment, settle or withdraw objections to Disputed Claims, in their sole discretion, without advance oral or written notice to any party-in-interest, except the Entities holding the Disputed Claims.

6.7     Time Limit for Objections To Claims.  Objections to claims shall be filed by the Debtors and served upon each holder of each Claim to which objections are being made, not later than one hundred twenty (120) days after the Effective Date, unless such time is extended by the Bankruptcy Court by a Final Order issued on or before said final date for objections to claims.

6.8     Disputed Claims.  Disputed Claims which become Allowed Claims pursuant to and by virtue of a Final Order issued on or after the Effective Date of the Plan, automatically shall be deemed to be classified in one of the classes of Claims herein, in accordance with the criteria set forth in Article III hereof, or if such Claim is entitled to treatment as an Administration Expense or a Priority Tax Claim, it shall be treated as such; and such Claim shall receive the treatment which is prescribed for such class in this Article, or if appropriate, the treatment which is prescribed for Administration Claims and Priority Tax Claims in Article II hereof, with all payments due through and including such date to such Claimant had the Claim been allowed as of the Effective Date, to be remitted in full to such Claimant on or before ten (10) days following the entry of the Final Order allowing such Claim.

6.9     Unclaimed Property By Claimants.  In the event that any Claimant fails for reasons which are outside the control of the Debtors to present and/or cash any check payment hereunder by the Debtors within ninety (90) days after the date that the check payment is sent by the Debtors in a manner comporting with Article V and XIII, such Creditor or Claimant shall be deemed to have irrevocably forfeited and waived all rights to said distribution and to any further distribution under this Plan, and such claimant shall have no further rights or recourse as against the Debtors.

6.10    No Stamp or Similar Taxes.  Pursuant to section 1146(c) of the Bankruptcy Code, as recently interpreted by the U.S. Supreme Court in Florida Department of Revenue v. Piccadilly Cafeterias, 128 S.Ct. 2326,

171 L.Ed. 2d 203, 2008 U.S. LEXIS 5025 (2008): (a) the creation of any mortgage, deed of trust, lien, pledge, or other security interest; (b) the making or assignment of any lease or sublease; or (c) the making or delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with, this Plan, including, without limitation, any restructuring, disposition, liquidation, dissolution, deeds, bills of sale, transfers of tangible property or the transfers, sales, and assignments of the Debtors' owned and leased real property made **pursuant to a confirmed Plan**, will not be subject to any document recording tax, stamp tax, conveyance fee, personal property tax, real estate transfer tax, intangibles or similar governmental assessment, and the Confirmation Order shall direct the appropriate state or local governmental officials or agents to forego the collection of any such tax or governmental assessment and to accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

## **ARTICLE VII**

### Default

7.1    Events of Default - The following shall constitute events of default under this Plan:

a.    A petition is filed by or against the Debtors under any chapter of the Bankruptcy Code; or any proceeding is instituted by or against the Debtors under state law for the appointment of a receiver, liquidation, or dissolution of the Debtors; or the Debtors make an assignment for the benefit of Creditors; provided, however, that the Debtors shall have the right to contest and defend in good faith by appropriate proceedings properly initiated and diligently conducted, any such petition or proceeding so filed against them, and no default shall be declared hereunder pending entry of a Final Order adverse to the Debtors so long as the Debtors are complying with the other provisions of this Plan; or

b.    The Debtors fail to remit any payment provided for in this Plan, except if (i) such payment or payments is or may be postponed pursuant to terms and conditions provided under this Plan, or (ii) the Debtors send a payment or distribution in conformance with Section 13.8 of this Plan, but said payment is not received or collected by the Claimant, Creditor, or Entity for any reasons outside of the Debtors' control, including without limitation, as a result of the failure by said Claimant, Creditor, or Entity to comply with the provisions of this Plan. In accordance with Section 6.9 hereof, such Claimants may be deemed to have irrevocably forfeited any

15

and all further rights to payments or distribution under this Plan and/or any other or further rights against the Debtors.

7.2          Cure of Defaults.       In the event a Creditor, Claimant, or Entity claims a default by the Debtors under the terms of this Plan, such Creditor, Claimant, or Entity shall not do anything in respect of such claimed default until it first provides written notice of such default to the Debtors from the complaining Claimant, in a manner conforming with Section 13.7 hereof. Thereafter, the Debtors shall have forty five (45) days from their receipt of such notice to cure such default or to initiate a proceeding before any appropriate forum including, without limitation, the Bankruptcy Court, in the event of any dispute or controversy as to whether any default actually occurred, and during said forty five (45) days, or to and until twenty (20) days following the date that a Final Order is issued which resolves any controversy or dispute as to whether a default actually occurred, whichever is later, no Claimant shall take any action to terminate this Plan or otherwise against the Debtors. If the claimed default is cured by the Debtors within such time periods, the complaining Creditor, Claimant, or Entity, shall fully accept such cure as if there had been no claimed default, and shall not present or argue any other or further claims against the Debtors in respect of the claimed default.  In the event that the default is not timely cured, the rights of the complaining Creditor, Claimant, or Entity as against the Debtors, shall be limited to initiating a proper proceeding against the Debtors in a court of appropriate jurisdiction to recover the remaining distribution owed under this Plan to such complaining Creditor, Claimant, Person, or Entity (which shall be fully binding upon all parties), **unless** there is a subsequent bankruptcy filing or a conversion of the case herein to chapter 7, in which event the entire amount Allowed herein less any distributions actually received thereon, shall be entitled to be claimed by the Creditor, Claimant, Person, or Entity in the new or converted case.

## ARTICLE VIII

Executory Contracts and Unexpired Leases

8.1          Any and all executory contracts and unexpired leases of the Debtors which are not expressly rejected and disaffirmed herein prior to the Confirmation Date, and are not the subject of pending applications to reject or disaffirm as of the Confirmation Date, shall be deemed to be assumed by the Reorganized Debtor.

16

## ARTICLE IX

Means of Implementation of Plan

9.1    Automatically upon the date that the Confirmation Order becomes a Final Order, the Debtors shall be deemed, pursuant to Sections 105(a) and 1123 of the Bankruptcy Code, to be the Reorganized Debtors. The Reorganized Debtors shall acquire and shall own all of the Debtors' legal and equitable interests in and to property, wheresoever located and whenever obtained.

Further, automatically upon the date that the Confirmation Order becomes a Final Order, the Reorganized Debtors shall be deemed to have acquired, and shall be responsible for, all of the liabilities of the Debtors. **However, all liabilities which arose or for any reason may be deemed to have arisen prior to the Filing Date and thereafter, on or prior to the Confirmation Date, shall only be required to be paid by the Reorganized Debtors in the manner and time set forth in the Plan, to the extent required under the Plan, with and under the conditions set forth in the Plan.**

9.2    All monies which shall be used to make the payments to all holders of Allowed Claims under this Plan shall be derived from the Reorganized Debtors' regular income and/or cash reserves.

## ARTICLE X

Releases

10.1    The distributions accorded under this Plan shall be in exchange for and in complete satisfaction, discharge, and release of all Claims of any nature whatsoever (including without limitation, for any interest otherwise accrued or accruing thereon from and after the Filing Date to and until the Confirmation Date, in consonance with Section 502[b][2] of the Bankruptcy Code) against the Debtors, and except as otherwise provided herein, upon the Confirmation Date, all Claims in or against the Debtors and the Debtors' Estate, shall be satisfied, discharged, and released in full in consideration of the distributions on account of such Claims under Articles II and V hereof; and **all** Claimants shall be absolutely barred and precluded from asserting against the Debtors or any of the Debtors' assets or properties, any other, further, or alternative Claim based on any act or omission, transaction, or other activity of any kind or nature that occurred on or prior to the Filing Date and/or the Effective Date of the Plan.

17

10.2 This Plan reflects a number of compromises on the part of all interested Persons. Those compromises are based among other things, upon a consensus that this Plan, when and if confirmed, will provide a fair and comprehensive solution of the problems of all interested Persons. Upon the Effective Date of the Plan, the Debtor shall be deemed to have waived, released, and discharged all claims and rights, if any, under Sections 542, 547 and 548 of the Bankruptcy Code which otherwise have or might have against any Claimant arising out of or relating to any accounts receivables owed to the Debtors, and/or any payments made by the Debtors to such Claimant prior to the Filing Date of the Debtors' chapter 11 case herein, except as to such adversary proceedings which are or were commenced at any time prior to the Effective Date of the Plan. However, any provision of this Plan to the contrary notwithstanding, in the event either that the Effective Date of the Plan does not for any reason occur or of a conversion of the Debtors' chapter 11 case herein to a case under chapter 7 of the Bankruptcy Code after the Effective Date of the Plan, (i) the provisions of the immediately preceding sentence of this subsection shall be deemed null and void, (ii) nothing in this subsection shall be deemed an admission that any claim or right under Sections 542, 547 or 548 of the Bankruptcy Code is waived, released, discharged, void or invalid in any respect, and (iii) nothing in this subsection shall be admissible into evidence or otherwise used in opposition to any action, suit, motion, or other proceeding under Sections 542, 547 or 548 of the Bankruptcy Code or otherwise for the avoidance and recovery of any such transfer.

## ARTICLE XI

Effect of Confirmantion/Completion of Plan Payments/Discharge

11.1 Completion of payments due to be made pursuant to this Plan shall, in accordance with Section 1141(d)(5) of the Bankruptcy Code entitle the Debtors to the issuance of a discharge (the "Discharge Order") from the Bankruptcy Court. Upon issuance, the Discharge Order shall be deemed to have discharged and released the Debtors and their Estate and property, from any Claim that arose or that may be deemed to have arisen at any time at or before the Confirmation Date, whether or not:

 a. a proof of the Claim is filed or deemed to be filed under Sections 501 and/or 1111(a) of the Bankruptcy Code;

 b. such Claim is allowed under Section 502 of the Bankruptcy Code; or

c.    the holder of any Claim has accepted or has been deemed to have accepted the Plan.

Upon and following the issuance of the Discharge Order, all Creditors, Claimants, and other Persons and Entities shall be enjoined and prevented from taking any action of any kind or nature, including instituting or continuing any judicial, administrative, or action or proceeding, against the Debtors, the Reorganized Debtors or any other Person or Entity to recover or collect on any pre-Confirmation Claims against the Debtors, or for any reason, under any theory of law or fact, other than and/or apart from receiving the treatment provided for the Claim held by such Creditor, Claimant, Person or Entity, under the provisions of this Plan, until and unless there is a default, in which event the provisions of Article VII of this Plan shall govern and control.

11.2    In accordance with Section 1141 of the Bankruptcy Code, except as otherwise provided herein, Confirmation of the Plan (notwithstanding whether the Order for the Confirmation becomes a Final Order) shall automatically revest the Debtors with all of the property of the Debtors' Estate, and said property shall thereafter be free and clear except as provided in this Plan including in Article V hereof, of all Claims of Creditors, Claimants, and all other Entities; and no further Order thereafter shall be required from the Bankruptcy Court nor shall any further notice be provided to Creditors, Claimants, or any other Entities having or claiming to have any claim in and/or to the Debtors and/or the Debtors' Estate, with respect to any actions which the Debtors see fit to take relative to such property, in the Debtors' sole and unfettered discretion except as otherwise provided in this Plan.

11.3    Notwithstanding the Confirmation of this Plan, the Debtors specifically shall, pursuant to Section 105(a) of the Bankruptcy Code, retain each and all of the special rights and powers which are granted in and under the Bankruptcy Code to Debtors in Possession, including without limitation (a) the right and power to continue and/or commence to recover monies due the Debtors, (b) the right and power to continue and/or commence any actions for recovery of damages resulting from any torts, malpractice, etc., suffered by the Debtors, (c) the right and power to commence and prosecute avoidance actions for the benefit of Creditors and/or Claimants pursuant to Sections 544, 545, 549, and/or 553 of the Bankruptcy Code; (d) the right and power to object to Claims; (e) the right and power to seek to equitably subordinate or void Claims and/or alleged security interests, etc.

11.4    Upon Confirmation of this Plan, the individual Chapter 11 cases of Jeffrey Joseph Jerome and Caroline Jerome shall be and hereby are substantively consolidated.

## **ARTICLE XII**

Retention of Jurisdiction

12.1    Subsequent to Confirmation, the Bankruptcy Court shall retain jurisdiction of and over the Debtors' case pursuant to and to effectuate the purposes of Sections 105(a), 1127 and 1112(b)(6)-(8) of the Bankruptcy Code, and for any and all other purposes necessary to effectuate the Plan or the Bankruptcy Code, including, inter alia:

a.    to determine any and all objections to allowance of Claims and/or requests for reconsideration of Orders allowing a Claim in whole or in part;

b.    to determine any and all controversies, disputes or action arising in, under or in connection with the interpretation or enforcement of the terms and conditions of this Plan, and such other matters as may be provided for in the Confirmation Order;

c.    to effectuate payment under and performance of the provisions of the Plan;

d.    to determine any and all applications (including for Professional Fees), adversary proceedings, and litigated matters as may exist between the Debtors and Claimants provided for under this Plan and/or any other person or entity, whether pending on the Confirmation Date, or arising subsequent thereto, which disputes include but are not limited to questions respecting the Debtors' right or title to assets and/or the Debtors' right to recover property pursuant to pertinent provisions of the Bankruptcy Code;

e.    to consider any proposed modification of this Plan subsequent to the Confirmation Date, pursuant to Section 1127 of the Bankruptcy Code;

f.    to adjudicate any adversary proceedings commenced or to be commenced by the Debtors.

g.    to determine any and all disputes that arise in the context of assumption of executory contracts or unexpired leases

h. to enter an Order or otherwise issue a discharge to the Debtors upon completion of their payments under the Plan, and/or to enter an Order determining the Debtors' right to a discharge pursuant to 11 U.S.C. Section 1141(d)(5);

i. to enter any Order, including an injunction, which the Court deems to be necessary and appropriate to enforce the Debtors' discharge, or title, rights, and powers; and

j. to enter an Order closing the Debtors' case.

12.2 However, the Bankruptcy Court shall <u>not</u> retain jurisdiction to review and/or examine the fees of any professional Persons employed by the Debtor, which are incurred at any time after the issuance of the Confirmation Order, and all such Fees shall be paid in the ordinary course of business by the Debtors and/or the Reorganized Debtors.

## **ARTICLE XIII**

### Miscellaneous Provisions

13.1 <u>Headings</u>. Headings are utilized in this Plan for the convenience of reference only, and shall not constitute part of this Plan for any other purpose.

13.2 <u>Defects, Omissions, and Amendments</u>. This Plan may be altered, amended, or modified by the Debtors before or after the Confirmation Date as provided in Section 1127 of the Bankruptcy Code.

13.3 <u>Governing Law</u>. Except to the extent that the Bankruptcy Code is applicable, all rights and obligations arising under this Plan shall be governed by, and construed and enforced in accordance with, the internal laws of the State of New York.

13.4 <u>Severability</u>. Should any provision of this Plan be determined to be unenforceable, such determination shall in no way limit or affect the enforceability and operative effect of any or all other provisions of this Plan.

13.5 <u>Revocation</u>. The Debtors reserve the right to revoke or withdraw this Plan prior to Confirmation.

13.6        <u>Effect of Withdrawal or Revocation</u>. If the Debtors revoke or withdraw this Plan pursuant to Section 13.5 hereof, or if Confirmation or the Effective Date of the Plan do not occur for any reason whatsoever, this Plan shall be deemed to be null and void; and in such event nothing contained herein shall be deemed to constitute a waiver or release of any Claims by or against the Debtors or any other Person to prejudice in any manner the right of the Debtors or any Persons in any further proceedings involving the Debtors.

13.7        <u>Notices</u>. All notices required to be made in or under this Plan shall be made in writing and shall be mailed by registered or certified mail, return receipt requested:

     a.     If to the Debtors, to Jeffrey and Caroline Jerome, 241 Norwood Avenue, Northport, New York 11768, or at such other address as is designated by the Debtors in a notice which is sent to all Entities which at that time have Allowed Claims which have not yet fully received the distributions to which they are entitled under this Plan; <u>and</u> a copy of any such notice must also be sent to the Debtors' counsel herein, The Law Office of Michael G. Mc Auliffe, Esq., 68 South Service Road, Suite 100, Melville, New York 11747.

     b.     If to Creditors, Claimants, or other Persons or Entities, to the address which is currently on file for said Persons with the Bankruptcy Court, or as otherwise designated in writing by such Person to the Debtors and the Debtors' counsel in the manner set forth above.

13.8        <u>Cash Payments by the Debtors</u>. All payments which shall be made by the Debtors to Claimants shall be made by any of regular check subject to collection, payable in lawful currency of the United States of America, and shall be deemed to be made when sent by the Debtors. Payments shall be sent by first class mail, postage prepaid, to the address which is currently on file for said Entity with the Bankruptcy Court, or as otherwise designated in writing to the Debtors in the manner set forth in Section 13.7(a) hereof.

13.9        Except as provided in Section 6.9 hereof, no failure on the part of any person to exercise, and no delay in exercising any right hereunder shall operate as a waiver thereof; nor shall any single or partial exercise of any right hereunder preclude any other or further exercise thereof or the exercise of any other right.

13.10      The obligations of the Debtors and Creditors and Claimants hereunder are several. Except as provided in Section 6.9 hereof, no failure by the Debtors or any other Person to carry out obligations hereunder shall relieve any Person or the Debtors of their obligations hereunder, whether or not such failure constitutes an event of default, nor shall any Creditor or Claimant be responsible for the obligations of, or any action taken or omitted by, any other Person hereunder.

Except as expressly provided herein, this Plan shall be binding upon any and all successors or assigns of the Debtors and on any and all successors and assigns of Creditors and Claimants.

Dated: Melville, New York
April 13, 2015

_____*/s/ Jeffrey J. Jerome*_____
Jeffrey Joseph Jerome, Debtor


_____*/s/ Caroline Jerome*_____
Caroline Jerome, Debtor



Prepared and Reviewed By:
THE LAW OFFICE OF MICHAEL G. Mc AULIFFE
Attorneys for the Debtors in Possession


By:    _____*/s/ Michael G. Mc Auliffe*_____
      Michael G. Mc Auliffe, Esq.
      68 South Service Road, Suite 100
      Melville, NY 11747
      (631) 465-0044